IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VIRTU FINANCIAL, INC. and VIRTU AMERICAS, LLC, | ) ) ) |
| Plaintiffs, | ) ) ) C.A. No. |
| v. | ) ) |
| EVAN WRIGHT, | ) ) |
| Defendant. | ) |

## COMPLAINT

Plaintiffs Virtu Financial, Inc. and Virtu Americas, LLC (collectively, "Virtu"), by undersigned counsel, hereby allege as follows:

## NATURE OF THE ACTION

1.  Defendant Evan Wright has breached his contractual obligation to return the equity compensation he was awarded under Virtu's Amended and Restated 2015 Management Incentive Plan (the "Incentive Plan"). Between 2018 and 2020, Defendant received Virtu shares under the Incentive Plan on three separate occasions (collectively, the "Equity Awards"). On each occasion, Defendant and Virtu entered into an Employee Restricted Stock Unit and Common Stock Award Agreement (collectively, the "Equity Award Agreements"). The Equity Award Agreements provide that the Equity Awards must be repaid if Virtu, through the Compensation Committee or its authorized agent, determines that Defendant engaged in activity that is in conflict with or adverse to the interest of Virtu, including by violating a confidentiality covenant or agreement with Virtu.

2.  Defendant failed to comply with his obligations under his Confidential Information and Invention Assignment Agreement (the "CIIAA") in connection with the end of his employment with Virtu. On February 5, 2021, Defendant resigned from Virtu, triggering Virtu's right to secure its highly confidential and proprietary information by forensically removing Virtu information from the devices he

used for work-from-home (the "Devices"). Defendant refused Virtu's reasonable request for forensic inspection of the Devices, and soon thereafter demanded a release of claims and payment of his attorneys' fees before he would provide access to the Devices.

3. Virtu brought actions in the Supreme Court of New York and before the Financial Regulatory Authority (FINRA) to assert its rights under the CIIAA. The New York State Supreme Court, Commercial Division, awarded injunctive relief granting Virtu the right to forensically inspect the Devices (the "Order"). Defendant refused to comply with the Order, insisting that any inspection of the Devices be limited to specific files that he alone determined belonged to Virtu. Defendant also moved to stay enforcement of the Order. On March 5, 2021, the appellate division of the New York Supreme Court denied the motion to stay. Despite the denial, Defendant maintained his refusal to comply with the Order.

4. Because of Defendant's continuous pattern of refusal to comply with his confidentiality obligations to Virtu, Virtu determined that Defendant had engaged in activity that is in conflict with or adverse to Virtu, and must return the vested portion of the Equity Awards. Virtu notified Defendant of its decision on March 10, 2021, and demanded $1,711,386—the value of Defendant's vested shares. Defendant was required under the Equity Award Agreements to repay this amount by March 31, 2021. Defendant has not made any repayment and has repeatedly denied his obligation to return the Equity Awards.

## THE PARTIES

5. Plaintiff Virtu Financial, Inc. is a Delaware corporation with a principal place of business at One Liberty Plaza, 165 Broadway, New York, New York 10006.

6. Plaintiff Virtu Americas, LLC is a Delaware Limited Liability Company with a principal place of business at One Liberty Plaza, 165 Broadway, New York, New York 10006.

7. Defendant Evan Wright is an individual who is domiciled in New Jersey. From May 28, 2013 until his resignation on February 5, 2021, Wright was employed as a Quantitative Specialist ("Quant") at Virtu Americas, LLC.

## JURISDICTION AND VENUE

8. The Court has personal jurisdiction over Defendant pursuant to the Equity Award Agreements, wherein Defendant agreed that "he consent[ed] to the personal jurisdiction of the United States Federal and state courts sitting in Wilmington, Delaware."

9. This Court has subject-matter jurisdiction over the causes of action stated herein pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship and Plaintiffs seek to recover damages in excess of $75,000. Plaintiffs are Delaware business entities with their principal place of business in New York; Defendant is domiciled in New Jersey.

10. Venue is appropriate in this Court pursuant to the forum selection clause in the Equity Award Agreements, in which the Parties agreed that the State and Federal Courts of Wilmington, Delaware are the exclusive jurisdiction with respect to matters arising out of or related to the enforcement of Virtu's determinations under the Incentive Plan.

## ALLEGATIONS

**I.    BACKGROUND**

11. Virtu is a leading financial firm that leverages cutting-edge technology to deliver liquidity to the global markets through market making. At the heart of this market-making technology are highly proprietary trading algorithms, powered by mathematical models for pricing securities in the markets ("Predictors"). The types of information, combinations of information and formulas used to create pricing models are highly proprietary and confidential.

12. The electronic trading industry is highly competitive and developing a successful electronic trading strategy based on effective use of Predictors provides a competitive advantage worth millions of dollars annually. Accordingly, Virtu employs thorough technical and administrative controls to ensure that only those with a legitimate business need have access to the Predictors and trading algorithms. These controls include a company policy permitting Virtu to search the personal electronic devices of those with access to highly proprietary information, including Predictors and trading algorithms.

13. Due to the Covid-19 pandemic, Defendant and Virtu's other Quants have primarily operated under a remote-work model, which was previously permitted on a periodic basis. During this time, Virtu permitted its employees to work from home, and to remotely access Virtu systems through their work-issued laptops. Quants could also perform remote work on personally owned computers and laptops, provided the employee engaged in the appropriate security protocols.

14. Prior to Defendant's resignation from Virtu, Defendant's primary responsibility was to develop and manage a global trading strategy based on Virtu's Predictors. Defendant had a level of access to Predictors and trading algorithms matched by very few Virtu employees.

15. While employed with Virtu, Defendant used two personally owned computers to perform remote work. In the course of his remote work, Defendant regularly connected these devices to Virtu's Virtual Private Network (VPN) and accessed Virtu servers used for the development of Predictors and trading algorithms.

II. **DEFENDANT'S CONFIDENTIALITY AGREEMENTS AND OBLIGATIONS**

16. On May 28, 2013, Defendant and Knight Capital Group, Inc., a corporate predecessor to Virtu Financial, Inc., entered into a Confidential Information and Invention Assignment Agreement (*i.e.*,

the CIIAA), attached as **Exhibit 1**. Section 3 of the CIIAA provides that Defendant is required to return all Virtu confidential information upon the cessation of his employment with Virtu:

> I agree that, at the time of leaving the employ of the Company, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) the Confidential Information, including, but not limited to, any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items developed by me pursuant to my employment with the Company or otherwise belonging to the Company, its successors, or assigns.

17. Defendant also agreed to comply with Virtu policies, including the Virtu Employee handbook, which provides that personally-owned devices will be subject to search when employment ends. Defendant regularly acknowledged in writing that the policies set forth in the Handbook were to govern his employment with Virtu, and that it was his responsibility to carefully review and understand all information contained in the Handbook.

### III.  VIRTU'S INCENTIVE COMPENSATION PLAN

18. Virtu awards certain eligible employees discretionary bonus compensation in accordance with the Virtu Financial, Inc. Amended and Restated 2015 Management Incentive Plan (*i.e.*, the Incentive Plan), a copy of which is attached as **Exhibit 2**. Awards under the Incentive Plan may include Virtu common stock or Restricted Stock Units (RSUs).

19. The intended purpose of the Incentive Plan is to:

(i) attract and retain key personnel by providing them the opportunity to acquire an equity interest in the Company or other incentive compensation measured by reference to the value of Common Stock; and
(ii) align the interests of key personnel with those of the Company's shareholders.

20. Section 4 of the Incentive Plan establishes that the Virtu Compensation Committee (the "Committee"), directly or through its authorized agents, administers the Plan. The Committee and its authorized agents have the sole and plenary authority to interpret the Incentive Plan, and to make any determination or take any other action deemed necessary or desirable for the administration of the Plan.

21. Section 15(a) provides that "Each Award under the Plan shall be evidenced by an Award agreement, which shall be delivered to the Participant and shall specify the terms and conditions of the Award and any rules applicable thereto."

22. Section 15(v) establishes that awards under the Incentive Plan can be subject to cancellation and repayment (*i.e.*, clawback). Specifically, individual award agreements under the Incentive Plan may provide that "the Committee may cancel such Award if an employee engages in activity that is in conflict with or adverse to the interest of the Company." The award agreements may also require that when the Committee cancels an award, the participant must promptly repay the value of the award.

## IV. **DEFENDANT'S INCENTIVE COMPENSATION UNDER THE PLAN**

23. Defendant regularly received incentive compensation while employed by Virtu. Defendant was awarded Virtu RSUs and/or Class A Common Stock under the Incentive Plan annually from 2018 through 2020.

24. For each of the three Equity Awards under the Incentive Plan, Defendant and Virtu entered into a Restricted Stock Unit and Common Stock Award Agreement (collectively, the "Equity Award Agreements"), attached as **Exhibits 3-5**. The effective dates for the Equity Award Agreements are January 23, 2018 (Ex. 3), January 23, 2019 (Ex. 4), and January 24, 2020 (Ex. 5).

25. Each of the Equity Award Agreements contains a section 7 titled "Clawback":

Notwithstanding anything to the contrary contained herein, the Committee may cancel the Shares and RSU award if the Participant, without the consent of the Company, has engaged in or engages in activity that is in conflict with or adverse to the interest of the Company or any Affiliate while employed by or providing services to the Company or any Affiliate, including fraud or conduct contributing to any financial restatements or irregularities, or violates a non-competition, non-solicitation, non-disparagement, non-disclosure or confidentiality covenant or agreement with the Company or any Affiliate, as determined by the Committee. In such event, the Participant will forfeit any compensation, gain or other value realized previously or thereafter on the vesting or settlement of the RSUs, the sale or other transfer of the Shares and the RSUs, or the sale

6

of shares of Class A Common Stock acquired in respect of the RSUs, and must promptly repay such amounts to the Company. If the Participant receives any amount in excess of what the Participant should have received with respect to the Shares or under the terms of the RSUs for any reason (including without limitation by reason of a financial restatement, mistake in calculations or other administrative error), all as determined by the Committee, then the Participant shall be required to promptly repay any such excess amount to the Company. To the extent required by applicable law and/or the rules and regulations of NASDAQ or any other securities exchange or inter-dealer quotation system on which the Class A Common Stock is listed or quoted, or if so required pursuant to a written policy adopted by the Company, the Shares and the RSUs shall be subject (including on a retroactive basis) to clawback, forfeiture or similar requirements (and such requirements shall be deemed incorporated by reference into this Agreement).

26. Each of the Equity Awards vest over a multi-year period. As of February 5, 2021—the date Defendant voluntarily resigned from Virtu—the vested portions of the Equity Awards totaled 61,012 Virtu shares (*i.e.*, Class A Common Stock and/or RSUs).

## V.    DEFENDANT VIOLATES HIS CONFIDENTIALITY AGREEMENTS

27. On February 5, 2021, Defendant tendered his resignation, which Virtu accepted effective immediately. Pursuant to the terms of the CIIAA and applicable Company policy, after receiving Defendant's tender of resignation, Virtu requested that a mutually agreeable third-party forensic expert be permitted to conduct a forensic examination of the personal devices that Defendant used to access Virtu information under Virtu's work-from-home policies (*i.e.*, the Devices), so that any Virtu confidential and proprietary information could be removed from the Devices. Virtu explained to Defendant that the forensic expert would image the Devices; search the images for Virtu confidential and proprietary information; remove from the Devices any Virtu confidential and proprietary information found; and, finally, destroy any of Defendant's personal information that was included on the imaged data. Virtu stressed to Defendant that it has no interest in his personal information, and that Virtu would take steps to filter Defendant's personal information out from anything it saw. Virtu further explained that it would bear all of the costs associated with the forensic examination.

28. Although Defendant was originally amenable to Virtu's reasonable request, Defendant retained counsel and thereafter refused to provide the Devices to Virtu security. Defendant later responded through counsel on February 15, 2021, that he would not agree to submit the Devices to forensic examination unless Virtu released all known and unknown claims against him, and paid for his attorneys' fees.

29. Virtu initiated arbitration before FINRA on February 21, 2021, and simultaneously moved for a temporary restraining order ("TRO") and a preliminary injunction in the New York State Supreme Court, New York County Commercial Division (Index No. 651133/2021). On February 26, 2021, the Court held a hearing on the request for a TRO. At the hearing, the Court ruled for Virtu, determining that Defendant was in possession of Virtu confidential information, and that by voluntarily choosing to use his personal devices to perform remote work instead of the laptop Virtu provided to him, Defendant had put his personal devices "at issue." On that same day, the Court issued an Order to Show Cause (the "Order"), attached as **Exhibit 6**, requiring, inter alia:

> **ORDERED**, that [Defendant] shall either (i) permit [Virtu] to make a forensic mirror image of his personal devices that were previously used to access Virtu confidential information, including without limitation, his personal desktop computer, his personal laptop computer, and his personal cell phone that received Virtu email, which forensic imaging shall be done by [Virtu] at [Defendant's] home or other mutually convenient and agreed upon location, or (ii) permit said devices to be delivered to attorney escrow for forensic examination (in which case the defendant shall have a print out of all his contacts), or the parties will agree to (iii) another mutually agreeable protocol with respect to the inspection of said devices, which election [Defendant] shall make and communicate to [Virtu] by Monday 3-1-2021 at 5 pm; and it is further
>
> **ORDERED** that the parties will agree on search terms by end of business 3/3/2021; and it is further
>
> **ORDERED** that pending the forensic imaging or delivery of devices to the plaintiff, [Defendant] shall not delete or otherwise alter any of the information contained on these personal devices in any way

30. Defendant elected option (i) under the Order, and accordingly, a forensics firm selected by Virtu collected forensic images of the Devices. However, the parties failed to reach agreement

regarding keywords because Defendant refused to agree to certain foundational search terms such as "predictor."

31. Defendant appealed the Order to the Supreme Court Appellate Division, First Department (Index. No. 2021-00705) on March 1, 2021, and on March 2, filed an Emergency Motion to Stay the Order. The Appellate Court held a hearing on the Motion to Stay on March 5. At the hearing, the Appellate Court rejected Defendant's claims of an inviolable privacy concern, echoing the Supreme Court's admonition that Defendant waived those concerns, and put his personal devices at issue, by choosing to commingle personal information with Virtu proprietary and confidential information.

32. The Appellate Court informed Defendant that, regardless of the forum, based on the contracts, it was "inevitable" that Virtu would be able to examine the devices; that Virtu was "entitled" to "wipe-out" any Virtu information on the devices; that Defendant's tactics would only lead to him incurring legal fees before the "inevitable" occurs, whether ordered by the Supreme Court or FINRA; and that, given Defendant's actions since his resignation, the Appellate Court could see why Virtu had become concerned about what Virtu information may remain on these devices and why it was there.

33. On March 5, 2021, the Appellate Court denied Defendant's motion to stay because the issue before it, whether the devices could be imaged, was moot.

34. Nonetheless, Defendant continued his non-compliance with the Order. Despite the fact that two courts of competent jurisdiction had found in Virtu's favor, Defendant maintained his position that he need not agree to allow the search of the Devices to proceed until so ordered by FINRA. In other words, Defendant refused to comply with his confidentiality agreements unless told to do so by three different tribunals.[1]

---

[1] Subsequent to the Committee's decision to cancel Defendant's Equity Awards, FINRA sustained the New York Supreme Court and Ordered that the forensic inspection and removal of Virtu information from the Devices proceed. FINRA's March 17, 2021 Order is attached as **Exhibit 7**.

## VI. DEFENDANT TRIGGERS REPAYMENT OBLIGATION AND FAILS TO REPAY

35. On or around March 10, 2021, the Committee (*i.e.*, the Virtu Compensation Committee) through its authorized agents determined that the Equity Awards should be cancelled because of Defendants' ongoing breach of the CIIAA and other confidentiality agreements.

36. On March 10, 2021, Virtu issued a notice to Defendant that, pursuant to section 15(v) of the Incentive Plan and Section 7 of the Equity Award Agreements, he was required to remit $1,711,386, "representing the current cumulative value of the vested stock awards granted to [Defendant] from 2018 through 2020." This notice is attached as **Exhibit 8**.

37. The notice provides that the amount due must be remitted by March 16, 2021.

38. On March 11, 2021, Defendant denied that any amount is due, but also requested an accounting, which Virtu provided on March 24, 2021. Virtu also extended the due date for the amount due to March 31, 2021. On March 25, 2021, Defendant again denied that any amount is due. True and correct copies of the March 11, 24 and 25 correspondence are attached as **Exhibits 9-11**.

39. To date, Defendant has not remitted payment for any portion of this amount due.

## COUNT I
## DEFENDANT'S BREACH OF CONTRACT

40. Plaintiffs repeat and reallege the allegations set forth above, as though fully set forth herein.

41. Defendant and Virtu entered into three Restricted Stock Unit and Common Stock Award Agreements, dated January 23, 2018, January 23, 2019, and January 24, 2020. Defendant was awarded Virtu RSUs and/or Class A Common Shares under each of these Agreements. A portion of these awards have vested and were sold by Defendant.

42. In accordance with Section 15(v) of the Amended and Restated 2015 Management Incentive Plan, each of the Restricted Stock Unit and Common Stock Award Agreements contains a clawback provision in Section 7, which provides that:

> Notwithstanding anything to the contrary contained herein, the Committee may cancel the Shares and RSU award if the Participant, without the consent of the Company, has engaged in or engages in activity that is in conflict with or adverse to the interest of the Company or any Affiliate while employed by or providing services to the Company or any Affiliate, including fraud or conduct contributing to any financial restatements or irregularities, or violates a non-competition, non-solicitation, non-disparagement, non-disclosure or confidentiality covenant or agreement with the Company or any Affiliate, as determined by the Committee. In such event, the Participant will forfeit any compensation, gain or other value realized previously or thereafter on the vesting or settlement of the RSUs, the sale or other transfer of the Shares and the RSUs, or the sale of shares of Class A Common Stock acquired in respect of the RSUs, and must promptly repay such amounts to the Company.

43. On or around March 10, 2021, Virtu determined under Section 15(v) of the Amended and Restated 2015 Management Incentive Plan and Section 7 of the Restricted Stock Unit and Common Stock Award Agreements that Defendant had engaged in activity that was in conflict with or adverse to the interest of Virtu, including, *inter alia*, by breaching his obligations under the CIIAA and other confidentiality agreements.

44. On March 10 and 24, 2021, Virtu informed Defendant of this decision and demanded the return of $1,711,384, representing the value of the vested portions of the stock awards granted to Defendant from 2018 through 2020.

45. On March 11 and 25, 2021, Defendant refused to comply with the repayment demand and denied having any repayment obligation. Defendant has yet to make any repayment.

46. Accordingly, Defendant has materially breached his obligations under the Restricted Stock Unit and Common Stock Award Agreements to promptly repay the value of the Equity Awards.

47. As a result of such breaches, Virtu has been damaged, at a minimum, in the amount of unreturned Equity Awards.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against Defendant, as follows:

1. Awarding contract damages to Plaintiffs of $1,711,386, with pre-judgment interest accruing as of March 31, 2021; *and*

2. Such other and further relief, whether in law or at equity, as this Court deems just and proper.

| | |
|---|---|
| *Of Counsel:*<br><br>William F. Dugan<br>BAKER & MCKENZIE LLP<br>300 East Randolph Street, Suite 5000<br>Chicago, IL 60601, USA<br>(312) 861 4208<br><br>Jacob M. Kaplan<br>BAKER & MCKENZIE LLP<br>452 Fifth Avenue<br>New York, NY 10018<br>(212) 626-4100<br><br>Dated:  May 10, 2021 | ASHBY & GEDDES<br><br>*/s/ Catherine A. Gaul*<br>_____<br>Catherine A. Gaul (#4310)<br>Andrew C. Mayo (#5207)<br>500 Delaware Avenue, 8th Floor<br>P.O. Box 1150<br>Wilmington, DE  19899<br>(302) 654-1888<br>cgaul@ashbygeddes.com<br>amayo@ashbygeddes.com<br><br>*Attorneys for Plaintiffs* |